Filed 5/8/14  P. v. Davenport CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAYMOND DONALD DAVENPORT,<br><br>    Defendant and Appellant. | H039783<br>(Santa Clara County<br>Super. Ct. No. C1108020) |

Pursuant to a negotiated disposition, Raymond Davenport (defendant) pleaded no contest to two counts of robbery (Pen. Code, § 211).  As to count one, defendant admitted that he personally used a firearm within the meaning of Penal Code section 12022.5 and that he had served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b).  In exchange for his no contest plea, defendant was promised that he would be sentenced to 10 years in state prison.[1]  Further, the People stipulated that defendant would receive custody credits from the date of his arrest in this case.

Subsequently, on April 26, 2013, the court sentenced defendant to the upper term of five years on count one and the upper term of five years on count two to be served

---

[1]    The understanding was that in a pending case out of San Mateo County any sentence imposed in that case would run concurrent to the sentence in this case.  It appears that there was a fourth case out of Santa Barbara County; the understanding was that in that case defendant would receive a one-year prison term to be served consecutive to the term in this case.

concurrently. The court imposed a term of four years for the Penal Code section 12022.5 gun enhancement and one year for the prison prior (Pen. Code, § 667.5, subd. (b))—for a total prison term of 10 years. The court imposed various fines and fees and ordered that defendant pay victim restitution in the amount of $2,482 to Bank of the West, and $2,017 to U.S. Bank; the court imposed a general restitution order in favor of a Ms. Krystle Gutierrez. The court awarded defendant 696 actual days of custody credit plus 104 days pursuant to Penal Code section 2933.1.

On June 17, 2013, defendant filed a notice of appeal. He sought and was granted a certificate of probable cause. In his request for a certificate of probable cause, defendant claimed that he was under duress when he entered his pleas and admission; specifically, he asserted that his public defender misled him and pressured him to enter a plea.

Defendant's appointed counsel has filed an opening brief in which no issues are raised and asks this court for an independent review of the record as required by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Counsel has declared that defendant was notified that no issues were being raised by counsel on appeal and that an independent review under *Wende* was being requested.

On January 14, 2014, we notified defendant of his right to submit written argument on his own behalf within 30 days. That time has passed and we have not received a response from defendant.

Pursuant to *Wende*, *supra*, 25 Cal.3d 436, we have reviewed the entire record and have concluded there are no arguable issues on appeal. Pursuant to *People v. Kelly* (2006) 40 Cal.4th 106, we provide "a brief description of the facts and procedural history of the case, the crimes of which the defendant was convicted, and the punishment imposed." (*Id*. at p. 110.)

2

*Count One*

On April 22, 2011, Krystle Gutierrez was working as a teller at the Bank of the West in Saratoga. At one point during the morning, Ms. Gutierrez saw a man walk into the bank; she recalled that he was Caucasian and appeared to be in his mid-40s; he was wearing a windbreaker and a hat. Ms. Gutierrez noticed the man standing where customers fill out deposit slips. She asked him if she could help him and he stepped to her window where he asked for a withdrawal slip. Ms. Gutierrez gave him a slip and the man stepped to her left. A few seconds later, the man said " 'This is a robbery. You have 60 seconds to give me your money.' " Ms. Gutierrez froze; she saw the man reach into his pocket and pull out a gun. The man began counting back from 60 at which point Ms. Gutierrez became extremely scared and gave the man money from her till. The man put the money in a bag and left the bank. Ms. Gutierrez was shown several photographic line-ups. In some she did not recognize anyone, but in some she did choose a suspect. During the preliminary examination, Ms. Gutierrez identified defendant as the person she had chosen in one of the photographic line-ups, but she could not say that he was the person who robbed the bank.

*Count Two*

Erica Rivera was the assistant manager at the U.S. Bank in Saratoga on May 10, 2011. On that day she was at one of the teller windows when she saw a man come into the bank and walk over to the table where people fill in deposit and withdrawal slips. Ms. Rivera asked the man if she could help him and he approached the window next to hers. She told him to move over to her window.[3] The man was wearing dark glasses and

---

[2] We take the facts of this case from the preliminary hearing transcript. The parties stipulated to a factual basis for defendant's change of plea and admission based, in part, on the preliminary hearing transcript.

[3] In court, Ms. Rivera identified defendant as the man she saw that day.

what appeared to be something on his head, which she thought could have been a yarmulke; the man had a Band-Aid over his nose and his arm was in a black sling.  Ms. Rivera asked the man how she could help him and he responded, " 'This is a bank robbery.  I have a gun.  Don't push the alarm.' "  She thought he said " 'You have 45 seconds to give me all of your money.' "  Although Ms. Rivera did not see a gun she believed he had one.  The man gestured toward her with the hand that was in a sling and began counting backwards.

Ms. Rivera began giving the man the money; he put it into a blue bag.  At one point the man told her that she needed to give him more money.  Once Ms. Rivera had given him everything she had, including "bait money," the man began walking away; he said " 'I'm sorry, but my son needs shoes' " or " 'my son needs something.' "  The man left the building.

Some time later, Ms. Rivera was shown a photographic lineup in she was able to identify the man that robbed her.  She was 80 percent certain that it was the correct person.

Sergeant Alfredo Alanis investigated the robberies.  He took photographs from the surveillance cameras at the banks.  He created a track flyer and sent it out to various agencies throughout the county.  A few days later, Sergeant Alanis was notified that the man was identified by his parole agent.  He spoke to the agent; she told Sergeant Alanis that she recognized the man as Raymond Davenport who she had been monitoring as a parolee.  Some time later, Sergeant Alanis learned that defendant had been arrested in Santa Barbara; and Santa Barbara police located a blue baseball cap and a green jacket that the man in the April 22 robbery could be seen wearing.

Sergeant Alanis showed the surveillance photographs to defendant's wife; she identified him.

Upon our independent review of the record, we conclude there are no meritorious issues to be argued, or that require further briefing on appeal.  Defendant received the

sentence he was promised; and the record indicates that he was informed of and knowingly and intelligently waived his constitutional rights before he entered his pleas and admission.[4] Further, the fines and fees imposed were supported by the law and the facts.

*Disposition*

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

---

[4] Defendant signed and initialed an advisement of rights, waiver, and plea form, in which he was advised of and waived his constitutional rights, was advised of the immigration consequences of his plea, and that he was pleading to two strikes. Further, the colloquy between defendant and the court at the time the court advised defendant of his constitutional rights and sought and received his waivers and pleas does not indicate that he was under any duress; defendant answered the court's questions without hesitation and appropriately.

5